UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X          INDEX NO. 21 cv 1967(VEC)

DOROTHEA  PERRY and JEAN SEME                     **SECOND AMENDED**
                                                   **COMPLAINT**
,

            Plaintiffs,

            -v.-


NEW YORK STATE ATHLETIC COMMISSION,               Jury Trial Demanded
KIM SUMBLER, EXEC, DIR., NEW YORK STATE
DEPARTMENT OF STATE and ANTHONY GIARDINA,

            Defendants.
-----------------------------------------------X

        Plaintiffs Dorothea Perry and Jean Seme (collectively "Plaintiffs"), individually , by and

through their attorney, Susan Ghim, Law Office of Susan Ghim, complaining of NYSAC, Kim

Sumbler, individually and as Executive Director of NYSAC, Anthony Giardina, individually and

as formeracting Executive Director of NYSAC allege as follows:

                            **NATURE OF THE ACTION**

1.       Plaintiffs Dorothea Perry and Jean Seme ("Plaintiffs") bring this action  pursuant to FLSA,

29 U.S.C.§§ 201 et. seq. to remedy violations of the  minimum  wage-and-hour provisions of the

FLSA by Defendants NYSAC, Kim Sumbler and Anthony Giardina (collectively, "Defendants")

who enacted and enforced policies and practices of willful and unlawful non-payment or wages

and/or non-payment of employees' earned minimum wages for all hours worked in a forty (40)

hour  work  week  and  applicable overtime wages for any hours worked past forty (40) hours in a work

week. Defendants willfully failed and deprived Plaintiffs of proper meal time/restroom breaks during their

workshifts.

Plaintiffs were required to arrive ahead of their work shift for possible availability of sandwiches which they were required to eat in a parking lot where trucks idled and produced overwhelming diesel fumes. At no relevant time were Plaintiffs provided a proper break room pursuant to FLSA, NYLL and OSHA. Defendants engaged in their unlawful conduct pursuant to an employment policy of inhuman treatment of inspectors, abusing their office to oppress inspectors with the threat of discharge and retaliation, minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL. At all relevant times, Governor Andrew Cuomo who appointed the executive directors of NYSAC was aware of these substandard and indecent work conditions for inspectors. To date, Governor Cuomo's office of employee relations has remained silent, indifferent and ineffective regarding inspectors' terms and conditions of employment. Each time Plaintiff Perry and Plaintiff Seme complained to the affirmative action office or the inspector general's office, both Plaintiffs were met with silence and thereafter, a pretextual discharge.

2.      Plaintiffs also bring an action under 42 USC §1981, §1983 for racial animus based fraudulent and pretextual discharge; failure to promote; denial of employment opportunities; hostile work environment; interference and obstruction by NYSAC executive director Defendant Kim Sumbler, a Gov. Cuomo appointee, of Plaintiffs' rights to be lawfully and peacefully present at places of public accommodations; the weaponization of police by Defendant Sumbler with a false allegation of a criminal act against Plaintiff Seme, a Black American man; Defendant Sumbler's arbitrary and capricious denial of Plaintiff Seme's NYSAC trainer license renewal; and

further deprivation of rights, privileges and immunities enjoyed by white persons under the U.S. and state Constitution and laws.

3.    Plaintiffs Perry and Seme seek compensation for Defendants' failure to pay applicable overtime wages back pay for retaliatory termination, liquidated damages, penalties, compensatory damages, pre-judgment and post-judgment interest, and attorneys' fees and costs, pursuant to the FLSA and NYLL. Plaintiffs Perry and Seme further seek section 45 USC 1981 and 1983 damages including but not limited to compensatory and punitive damages as well as a declaratory order finding Defendants engaged in racially discriminatory policies and practices and abuse of their office and to enjoin Defendants from this pattern and practice of conduct.

4.     The New York Labor Law should apply to the Plaintiffs in this action as NYSAC waived its status as a political subdivision of the state and any defense of sovereign immunity when it classified Plaintiffs as "at will" employees and willfully violated provisions of of the New York Labor Law including but not limited to failing to pay minimum wage, failing to pay wages for all hours worked by Plaintiffs, failing to provide wage notices and statements, failing to keep accurate time and payroll records, failing to ever timely pay wages, failing to pay spread of hours pay and applicable overtime wages.

5.    All Plaintiffs seek an order to declare that Defendants violated the FLSA and NYLL and enjoin Defendants from those unlawful practices, policies and conduct as well as retaliation and termination for complaining about the terms and conditions of their employment; and order reinstatement to  employment; and order Defendants to comply with state and federal labor laws to provide all Plaintiffs with proper, timely and lawful wages, workshift breaks and proper work break areas

## JURISDICTION AND VENUE

6.    This Court has original jurisdiction over this action pursuant to 28 USC §1331, §1337,29

USC §216 (b), (c),§ 217; 45 USC §1981 and §1983.

7.      This Court has supplemental jurisdiction over the New York state law claims under the 28 USC §1367(a).

8.      Venue in this district is proper under 28 USC §1391 NYSAC is headquartered at 123 Williams Street, New York, NY and all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

**The Parties and Factual Allegatio**ns

**Plaintiff Dorothea Perry**

9.      Plaintiff Dorothea Perry ("Perry") commenced her employment as a boxing inspector on or about 2004.  Plaintiff was employed by Defendant Corporation within the meaning of FLSA 29 USC §201 et seq. NYLL §§ 2 and 651.

10.     During the relevant time period of Plaintiff Perry's employment with NYSAC to date, Plaintiff Perry was a New York City resident.

11.     On or about 2004, Plaintiff Perry was recommended for the inspector position by black boxers who appreciated and requested her advocacy regarding the terms and conditions of the boxer's training at NYSAC facilities and performance event spaces that impacted their health welfare and safety.

12.     During her fourteen (14) years of employment as an inspector with NYSAC, Plaintiff Dorothea Perry was the only black female inspector at NYSAC.

13.     During Plaintiff's employment at NYSAC, Ms. Perry was willfully denied timely payment of her earned minimum wages for work performed within a 40 hour workweek pursuant to the FLSA 29 USC §201 et seq. and NYLL §650 et seq. Ms. Perry was also denied breaks during her workshift and a proper break room for meals. Ms. Perry was required to arrive prior to her shift and

if sandwiches were made available, Ms. Perry was required to eat in the parking lot where numerous trucks idled and produced overwhelming diesel fumes. Ms. Perry suffered repeated retaliation for making complaints to management regarding the terms and conditions of her and other inspectors' employment with NYSAC. Ms. Perry was denied promotions, denied opportunities to become a NYS boxing judge and ultimately discharged based on false pretexts.

14.     Despite recommendations by superiors such as the Commissioner and Chairman of NYSAC and an exemplary work performance record, Ms. Perry was repeatedly denied promotions on or about 2016 to deputy commissioner . One male, non-black inspector who was promoted over Ms. Perry lacked experience and credentials and was not required to submit a performance evaluation as Ms.Perry was required to do for consideration for the promotion.

15.     Based upon information and belief, Deputy Commissioner Ed Kunkle, a white man was hired as a deputy commissioner on or about 2017 without the requisite inspector experience or qualifications. NYSAC required deputy commissioners a minimum of two years experience as a NYSAC inspector which Plaintiff Perry was qualified and recommended for by the commissioner and chairman of NYSAC but denied based on her race.

16.     Based upon information and belief, Deputy Commissioner Ed Kunkle received prohibited remuneration by the state of New York by expensing his and his family's trips to New York from their home in Pennsylvania, for events costing approximately $1,000 per night in hotel and travel expenses paid by New York State and New York City taxpayers.  To afford Deputy Commissioner Ed Kunkle's lavish hotel and travel expenses and approximately $90,000 per annum salary, Plaintiff Perry was denied a promotion to deputy commissioner and denied other local deputy commissioners those assignments worked by Ed Kunkle. Plaintiffs were denied any local travel expenses to and from the event during early morning hours of  1AM or 2AM.

17.     On or about April 25, 2018, Plaintiff Perry was terminated in retaliation for making a

complaint to the NYS Inspector General's office about gender and race based discrimination against her by Defendant Giardina and Sumbler including denying Plaintiff Perry her promotion to deputy commissioner.

18.     Approximately one month after Plaintiff Perry's discharge, pursuant to an internal memorandum dated on or about May 2018, drafted by Defendant Sumbler, Defendant Sumbler based Plaintiff Perry's termination on the false pretext that Plaintiff Perry violated safety protocols at an event that Sumbler expressly admitted she had arbitrarily "immediately" before the subject event started without any prior notice whatsoever.

19.     Based upon information and belief, on the same night of the event for which Plaintiff Perry was terminated, a white inspector named Sue Etkin was assigned to a female boxer.  Plaintiff Perry was summoned by a deputy commissioner to assist this female boxer as she was gloved and needed assistance with the lavatory.  Based upon information and belief, Inspector Sue Etkin was ringside during this time Plaintiff Perry assisted the female boxer.

20.     Based upon information and belief, it was Defendant Sumbler who repeatedly violated safety protocols throughout the subject event.   Defendant Sumbler sent a Swanson media reporter to divert and obstruct boxer Gervonta Davis from a life saving, after bout medical exam ordered by the physician at ringside immediately after the bought.  Based upon information and belief, on the night of this event, Barclay's arena was under lockdown due to a shooting but Defendant Sumbler did nothing to alert NYSAC staff and never provided any training whatsoever on safety protocols in the event of active shooter incidents.

21.     Based upon information and belief, at that same event on or about April 21, 2018, Defendant Sumbler was responsible for arranging for security at Barclays yet during the event, a production employee named Brian Adams passed through security with four people who were all not permitted around the ring area stood with Defendant Sumbler and the Commissioner to watch

the event.

22.     Based upon information and belief, at the same April 21, 2018 event, A white employee named Luanna was assigned to "gloves" and was responsible for signing out appropriate gloves to boxers.  Based upon information and belief, that evening, the commissioner quizzed "Luanna" on what size gloves to give to a particular weight boxer, "Luanna" replied, "I have no idea, I work with licensing and linguist (sic)"  Based upon information and belief, if a boxers are given gloves that are not the appropriate size, this could lead to serious injuries.

23.     Based upon information and belief, at the same April 21, 2018 event, Defendant Sumbler was responsible for licensing and assignment of inspectors and deputy commissioners and licensed a ten (10) year old as a corner person (in the ring during the bout), who was the son of boxer Justin Sami scheduled to fight that night.  Based upon information and belief, the child was prevented from entering the ring, however, boxer Justin Sami was then left without an English language interpreter.  Based upon information and belief, boxer Justin Sami was placed in danger by Defendant Sumbler for failing to assign a language interpreter for communications during the bout and placed a child at imminent risk of physical injury by licensing the 10 year old and listing him as a corner person for his father.

24.     Based upon information and belief, Defendant Sumbler violated state and federal laws against child labor when she licensed the ten (10) year old son of boxer Sami and scheduled him to work the event on the night of April 21, 2021.

25.     At the same subject event, On or about April 21, 2018  Defendant Sumbler endangered the life of boxer Gervonta Davis and the safety of Plaintiff Perry when Defendant Sumbler directed a very large, white male Swanson media reporter to divert them from proceeding to Mr. Davis' after-bout medical exam to the press box for an interview.  When Plaintiff Perry refused to direct Mr.

Davis to press box and instead continued to escort Mr. Davis to the medical exam room along with the physician who instructed them to keep moving, the Swanson media reporter began to yell and scream at Plaintiff Perry, "I'm gonna kill you" and proceeded to violently kick objects. Plaintiff Perry later informed Defendant Sumbler about the reporter, and Defendant Sumbler did nothing and the reporter was allowed by Defendant Sumbler to enter the medical exam room where he continued to glare and was fixated on Plaintiff Perry as the reporter did not make attempts to interview boxer Davis. Afraid to turn her back on the reporter, Plaintiff Perry continued with her duties for the evening despite fearing for her safety as this reporter had threatened to kill her and previously, violently kicked objects and screamed threats at Plaintiff Perry. and accordingly, Plaintiff Perry made a police report.

26.     Based upon information and belief, On or about 2018, a white inspector Brett Lipton walked off the job after being assigned to a boxer by placing the boxer's gloves down and walked out of the venue leaving that boxer unassisted and costing that boxer a boxing match. Plaintiff Perry alerted the supervisors but Defendant Sumbler did nothing. Based upon information and belief, the white inspector who walked off the job is working events at NYSAC to date and suffered no adverse employment record, reprimand, admonishment or repercussion whatsoever for his terminable offense.

27.     Through on or about 2017, Defendant Anthony Giardina, motivated by racial and gender animus toward Plaintiff Perry interfered with her promotions to Deputy Commissioner and repeatedly demeaned and harassed her by ordering Plaintiff Perry to "sit in the back" boxing events when he knew Plaintiff Perry as an Inspector needed to be ringside. Defendant Giardina promoted a white inspector Frank Vasquez to deputy commissioner despite his continued harassment of Plaintiff Perry telling her to "shut up"  and called Plaintiff Perry a "liar" at staff meetings if Plaintiff Perry took issue with terms and conditions of her and other inspectors' employment such

as safety policies and protocols. Frank Vasquez also spread rumours among staff that plaintiff Perry was a snitch and then told everyone he worked at the New York State Division of Human Rights to deter any employees from making a discrimination complaint.

**Plaintiff Jean Seme**

28.      Plaintiff Jean Seme, ("Seme") was an at-will NYSAC Inspector employee from on or about 2015 through on or about March 17, 2017. Plaintiff Seme was recommended for hire by a black boxer. Plaintiff Seme is a black American man. At all relevant times, Plaintiff was employed by Defendant Corporation within the meaning of FLSA 29 USC §201 et seq. NYLL §§ 2 and 651

29.      During Plaintiff Seme's employment with NYSAC, he was a resident of New York City. Currently, Plaintiff Seme is a resident of Texas.

30.      During all relevant times of his employment, Plaintiff Seme was willfully denied his earned lawful minimum wage, spread of hours pay and applicable overtime wages and breaks during any work shift.

31.      On or about March 17, 2017 at a boxing event at Madison Square Garden, Defendant Sumbler and Defendant Anthony Giardina ("Giardina") who served as interim Executive Director at the same time as Defendant Sumbler, both exceeded their authority and conspired to terminate and harass Plaintiff Seme based on an outrageously and patently false pretext that he "threatened to blow up the building."

32.      Defendant Giardina also falsely accused Plaintiff Seme of failing to ensure that his assigned boxer for the event on or about March 17, 2017 had a pre-fight physical exam when that was the responsibility of a medical physician, not an inspector.  Plaintiff Seme took orders from Deputy Commissioner Anthony Coreccia who specifically instructed Plaintiff Seme, "as soon as the boxer gets here [locker room], wrap his

hands and glove him." Plaintiff Seme did not at any relevant time make that statement that he would blow up the building or any other remotely similar statement. Based on Defendant Sumbler's lie about Plaintiff Seme and at the behest of Defendant Sumbler, NYST Sands appeared at the home of Plaintiff Seme with another unidentified NYST Doe on several occasions commencing on or about March 17, 2017.

33.     During the first encounter, on or about March 17, 2017, New York State Trooper ("NYST") Charles D. Sands ("Sands") stated to Plaintiff Seme, "Kim Sumbler said you were going to blow up the building." Plaintiff Seme was shocked, intimidated and terrorized with the prospect of arrest or criminal charges based on this outrageously false allegation by Defendant Kim Sumbler.

34.     Had there been a credible bomb threat, Defendants Sumbler and Giardina endangered the public's safety in and around Madison Square Garden by not alerting NYPD.  Based upon information and belief, Defendants had a documented history of endangering boxers lives by clearing them for fights that medical physicians had prohibited.

35.     On approximately two more occasions thereafter, during the remainder of 2017, NYST Sands returned to the residence of Plaintiff Seme to intimidate, coerce and harass Plaintiff Seme to falsely implicate himself for a "threat" he never made. Based upon information and belief, these visits NYST Sands were made at the personal behest of Defendant Sumbler and / or Defendant Giardina. On or about March 23, 2017, Plaintiff Seme had made a written complaint to NYSAC about the March 17, 2017 incident to Maria Herman, Affirmative Action Officer at New York State Department of State (NYSDOS).  During one of those visits by NYST Sands, Sands demanded a copy of the complaint Plaintiff Seme submitted to NYSAC's Affirmative Action Officer Maria Herman who failed to investigate or refer the complaint to the Governer's Office of Employee Relations  Rather than investigating, this complaint, Gov. Cuomo's office of

Employee Relations or the inspector general ignored the complaint and allowed the harassment of Plaintiff Seme by NSYT Sands to continue. At the behest of Defendant Sumbler, NYSTs returned to Plaintiff Seme's home in retaliation for his complaint to intimidate, coerce and force Plaintiff Seme to withdraw the complaint against them and Sumbler.

36.     NYST Sands also made at least four separate phone calls to Plaintiff Seme's mother's cell phone. Only NYSAC had Plaintiff's mother's cell phone on file as an emergency contact. NYST Sands caused severe fright and terrorized Plaintiff Seme's mother with threats of state or police action against her innocent son Plaintiff Seme.

37.     Thereafter, each time Plaintiff Seme unknowingly but lawfully and peacefully present at a place of public accommodations where Kim Sumbler was present, Defendant Sumbler caused security to eject him from the premises. Defendant Sumbler exceeded her authority and purposely intimidated, harassed, embarrassed, humiliated and de-humanized Plaintiff Seme.

38.     On or about April 2018, Defendant Sumbler arbitrarily and capriciously denied renewal of Plaintiff Seme's boxer training license. Approximately 50 years after the decision in Ali v. State Athletic Commission where this court found that NYSAC arbitrarily and capriciously denied professional boxer Muhammed Ali aka Cassius Clay a boxing license, Defendant Sumbler defied this court's ruling. *See, Ali v. Division of State Athletic Commission of the Department of State*, 316 F.Supp. 1246 (SDNY 1970) Moreover, NYSAC's discriminatory policies have not changed in compliance with this court's ruling over 50 years ago. In Ali v. SAC, this court found an underlying racially discriminatory practice where black boxer Muhammed Ali was denied a boxer's license for alleged war draft evasion charges against Muhammed Ali in Texas. *Id at 1253*. (This Court determined, "Defendants [NYSAC] have offered no evidence tending to refute or rebut the overwhelming and undisputed proof of arbitrary and capricious, and unfounded discrimination furnished by plaintiff [Ali]") Id at 1252 In stark contrast, white boxers with serious criminal

convictions such as rape, assault and other crimes of moral turpitude were granted their boxing license by NYSAC without question. *Id at 1249, 1251, 1253*. This Court ultimately held, " the Commission [NYSAC] denied Ali his right under the Fourteenth Amendment to equal protection of the laws of the state of New York." *Id* at 1253 Without any criminal background or misconduct, Plaintiff Seme was denied a trainer's aka "seconds" license by NYSAC and Defendant Sumbler without any rational basis whatsoever. Accordingly, NYSAC and Defendant Sumbler violated Plaintiff Seme's rights to equal protection under New York State law in violation of 42 USC §1981 and equal protection under New York State laws pursuant to the fourteenth amendment to the US constitution as in this Court's decision in Ali v. SAC. *Id.*

39.     Because Defendants harassed Plaintiff Seme with police action on multiple occasions and unlawfully barred him from sports venues, Defendants made life intolerable for Plaintiff Seme in New York State and he constantly feared for his life and liberty at the hands of police as a black man and was forced to move out of New York State.

   **Defendant New York State Athletic Commission (NYSAC)**

40.     Based upon information and belief, NYSAC is a subdivision of the New York State Department of State (NYS DOS). NYSAC licenses boxers and has had a long history of racial discrimination against Black American Boxers that continues unabated to date**.** *See, e.g. Ali v. Division of State Athletic Commission of the Department of State*, 316 F.Supp. 1246 (SDNY 1970) Specifically, Plaintiff Seme's application for renewal of his boxing license that he paid a fee for on or about April 2018 has remained ignored, and otherwise arbitrarily and capriciously denied. *See, Id.* Plaintiff Seme and Plaintiff Perry further suffered interference with their constitutionally protected rights as black American citizens that other white citizens enjoyed such as the right to attend public sporting events at places of public accommodations. Defendant Sumbler, asexecutive director of NYSAC, exceeding her authority and under color of law forcibly removed or had

Plaintiffs ejected from sporting events where Plaintiffs were lawfully present.

41.     Based upon information and belief, NYSAC's purpose is commercial in nature as it earns significant profits from tax and other fees from all of the spectator events that it hosts. NYSAC hires at will employees, specifically to work at these events who are not afforded the protections of civil service employees under NY civil service laws and their labor union representatives.

42.     At all relevant times, NYSAC was an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a) and employed Plaintiffs within the meaning of the FLSA.

43.     Based upon information and belief, NYSAC does business nationally NYSAC hosts and oversees spectator boxing, wrestling and mixed martial arts (MMA) events and gains substantial revenues from these events. These events affect interstate commerce in that these events draw large spectator crowds, vendors, boxing, wrestling, MMA and various other celebrities to the state of New York. These events are also nationally broadcast on internet, cable and social media which earns NYSAC global revenue such as fees from pay per view events.

44.     Based upon information and belief, NYSAC has annual revenues far exceeding one million dollars per annum to satisfy the interstate commerce jurisdictional requirement under FLSA §201 et seq. NYSAC's annual gross volume of sales made, or business done, was not less than Five Hundred Thousand Dollars ($500,000.00) exclusive of sperate retail excise taxes, within the meaning of the FLSA, 29 U.S.C. § 203 (s)(1)(A)(ii).

45.     At all relevant times, NYSAC was a covered employer within the meaning of the FLSA, 29 U.S.C. §203(d), the NYLL §190, the N.Y. Executive Law § 292(5), and the N.Y Admin. Code. § 8-102(5).

46.     At all relevant times, Defendants maintained control, oversight, and direction over the Plaintiffs including timekeeping, payroll and other employment practices that applied to them.

47.     NYSAC waived its defense of sovereign immunity from NYLL lawsuit when it designated Plaintiffs as "at will" employees and denied Plaintiffs' rights under fourteenth amendment to the United States constitution to equal protection under the constitution and laws.  NYSAC purported by letter to the Court dated on or about August 2021 that Plaintiffs were public employees to evade employer liability under NYLL and also unlawfully denied Plaintiffs their due process rights under the New York State Civil Service Law for wrongful termination and pay grade and/or  wage underpayments and labor protections by the New York State Public Employees union.  NYSAC flouted the will of the Governor's office that has touted the NYLL wage theft provisions since its enactment as the most progressive in the nation and vowed to close all loopholes for employers from evading their responsibilities to every employee working in New York State to pay minimum wage and overtime in a timely manner.  Plaintiffs were never paid in a timely manner for their work as inspectors and often took four (4) to six (6) weeks to receive their wages for only eight hours of work when Plaintiffs regularly worked 11 – 12 hours per event or work shift without any proper meal time breaks.  NYSAC flouted many provisions of the New York Labor Law and abused Plaintiffs in violation of NYLL and the thirteenth amendment to the United States Constitution's prohibition against involuntary servitude.

48.     At all relevant times, NYSAC utilized discriminatory employment practices based on race to deny Plaintiffs opportunities as inspectors.  Defendant Giardina forbade Plaintiff Perry from "on camera" fight events while assigning a white female inspectors instead and instructed Plaintiff Perry to either leave the ring or sit in the back out of the sight of cameras.

49.     Based upon information and belief, On or about 2017, Ed Kunkle was hired as a Deputy Commissioner without the requisite two years of experience as a NYSAC inspector instead of Plaintiff Perry who was recommended for the position by the Commissioner and Chairman of NYSAC.

50.    Previously, on or about 2016, Defendant Giardina denied Plaintiff Perry her promotion to Deputy Commissioner despite an exemplary employment record and gave the promotion to a white inspector who neither submitted the requisite qualifications and had a history of verbally attacking and harassing Plaintiff Perry for instance by telling her to "shut up" when asked to speak on a topic at meetings and on or about 2018 asked to speak to Plaintiff Perry alone in a room that made Plaintiff Perry fear for her safety.

51.    NYSAC does not have sovereign immunity against libility under the FLSA 29 USC 201 et seq.  Prior to the commencement of this action, in an email dated on or about March 2021, the United States Department of Labor (USDOL) recommended to Plaintiff Perry that she had a private cause of action for wages or through the USDOL under FLSA against NYSAC.

**Equitable tolling of the statute of limitation**

52.    Due to Defendants' harassment and intimidation of Plaintiff Seme, the statute of limitations should be tolled as he was forced to leave the state on or about 2018 in fear for his life, liberty and further retaliation by Defendants Sumbler and Giardina.   Moreover, during 2020, due to the COVID 19 pandemic Plaintiff was not able to find and consult with counsel in New York State until March 2021 when he consulted the undersigned in connection with his pending witness testimony at the New York State Division of Human Rights for Plaintiff Perry.  Had the pandemic not delayed the New York State Division of Human Rights proceeding, both Plaintiffs would have instituted the instant action in 2020.  Upon discovering his rights and claims against NYSAC, Plaintiff Seme promptly commenced the instant action.  These extraordinary circumstances should toll the relevant statute of limitations for both Plaintiffs.

53.    Based upon information and belief, Kim Sumbler is a Canadian citizen and resident who was allowed preferential treatment by Governor Andrew Cuomo to become a NYS employee without fulfilling a residency requirement as all other NYSAC employees. Defendant Sumbler was

appointed as executive director of boxing and mixed martial arts (MMA) at NYSAC on or about 2017

54.    Based upon information and belief, Defendant Sumbler had no prior experience with the professional sport of boxing yet was recklessly and intentionally named as director of boxing by Gov. Cuomo. Based upon information and belief, the purpose or impact of Gov. Cuomo's appointment of Defendant Sumbler was to significantly decrease hosting boxing events thereby disenfranchising rising black boxers without the benefit of representation or promoters, in a predominantly black sport, and to increase MMA events with less rules of engagement, ergo inherently more dangerous for the purpose of generating revenues.

55.    At all relevant times, Defendant Sumbler maintained control, oversight, and direction over the Plaintiffs including timekeeping, payroll and other employment practices that applied to them.

56.    An internal office memorandum dated on or about May 2018 was written by Defendant Sumbler pertaining to the termination of Plaintiff Perry. This document fully displayed her racial animus and bigotry against black Americans. Sumbler stated in relevant part,

**"On the card, there were three athletes (Broner, Davis & Charlo) with known gang affiliations and famous artists (rappers), who were making threats to each other over social media leading up to the event."**

**"Immediately prior to the event…I informed all staff that contrary to normal procedures, that NYSAC would not permit any additional guests into the locker rooms…"**

**"I saw three large men…in addition to Gervonta Davis's (sic) camp, and guests…I asked them to leave…There were a few tense moments where they stared me down then eventually left without incident…they didn't belong…we were on heightened security alert because of**

**the threats that were made…this breach of locker room access placed both Ed Kunkle and me in a very dangerous situation…Had Dorothea notified Security immediately…we would not have been put in harm's way."**

57.    On or about April 2018, Defendant Sumbler repeated to sports media that these three athletes had "gang affiliations."

58.    The three athletes referenced in the May 2018 memorandum were black boxers who in fact, did not have gang or rapper affiliations.

59.    The "three large men" referenced in the May 2018 memorandum were also black men" who Sumbler speciously stated, put her in a "very dangerous situation" when Sumbler stated in a previous clause that these "three large men" who "didn't belong" and "left without incident. Moreover, Defendant Sumbler was in a supervisory role so if she believed she and deputy commissioner Ed Kunkle were in a "very dangerous situation" she should have believed that Ms. Perry was also in a "very dangerous situation" and acted in her supervisory role to resolve the "very dangerous situation."    At no relevant time were inspectors charged with security dutiesDefendant Sumbler also instituted a racist, arbitrary and capricious policy at this event to check all Boxers' family's identification to make sure they were family members.

60.    Defendant Sumbler also instituted a racist, arbitrary and capricious policy at this event to check all Boxers' family's identification to make sure they were family members.

61.    The "threats that were made" were purportedly on social media that did not involve NYSAC, the subject boxers or the event.    Defendant Sumbler engaged in a pattern of placing black men in a criminal and violent light and under color of law deprived plaintiffs and black boxers of rights, immunities and privileges under the state and US constitution and laws.

62.    When a white boxer Connor McGregor was accused of taking part in inciting a riot at an event on or about 2018, Defendant Sumbler was quoted in sports media as stating she would

reserve comment until all the facts were in.

63.     At no relevant time was Ms. Perry or any of the inspectors charged with security duties or to notify security especially when security were the ones who allowed these individuals inside the locker room.

64.     Defendant Sumbler's dangerous actions on the night of the subject event on or about April 2018 underscored her racism that also motivated her dangerous actions under color of law against Plaintiff Seme in 2017. Defendant Sumbler was aware of the consequences for black men when police were weaponized against them based on a false claim.  Defendant Sumbler exceeding her authority and/or under color of law, knowingly and falsely told NYST Sands on or about March 17, 2017 that Plaintiff Seme "threatened to blow up the building" in order to threaten, intimidate, cause foreseeable excessive force and bodily harm and the false arrest of Plaintiff Seme.  Throughout 2017, Defendant Sumbler similarly, under color of law threatened and intimidated Plaintiff Seme's mother with threats of police action and excessive force and bodily harm against her son, Plaintiff Seme.

**Defendant Anthony Giardina, NYSAC Commissioner through on or about 2017**

65.     Defendant Anthony Giardina was an interim Commissioner at NYSAC through on or about 2017.  Defendant Giardina and Sumbler's work as executive director overlap throughout the month of March 2017.  Defendant Giardina maintained control, oversight, and direction over the Plaintiffs including timekeeping, payroll and other employment practices applied to Plaintiffs from on or about 2015 through 2017.

66.     Defendant Giardina willfully and knowingly paid Plaintiffs less than minimum wage, applicable overtime, spread of hours pay and denied them any breaks during their work shift.

67.     During Plaintiff Perry's employment at NYSAC Defendant Giardina repeatedly ordered Plaintiff Perry to "sit in the back" when Defendant Giardina knew Plaintiff Perry needed to sit

ringside as part of her duties as an Inspector.

68.     On or about 2016, NYSAC and Defendant Giardina were determined to keep Plaintiff Perry off camera and discouraged and attempted to thwart Plaintiff Perry from appearing on a 60 minutes interview in relation to her friend and boxer Danny Jacobs. Ms. Perry was not asked to represent NYSAC in the 60 minutes clip, however NYSAC and Defendant Giardina made every attempt to discourage her from appearing.

69.     Defendant Giardina sexually harassed Plaintiff Perry on or about March 17, 2017 asking her for "a hug."  Plaintiff Perry reported the incident to Maria Herman, Affirmative Action Officer of the New York State Department of State ("NYS DOS").  By letter dated November 28, 2017, Ms. Herman stated, "[she] was unable to substantiate the allegations that …Respondent Giardina engaged in sexual harassment…and no further action will be taken with regard to this complaint. According to the letter, Ms. Herman performed the investigation personally as she stated, "The Affirmative Action Officer (depicting herself in the third person) has completed its (sic) investigation…"  Ms. Herman exceeded her authority and improperly failed to refer the matter to the Governor's Office of Employee Relations.

70.     Based upon information and belief, on or about 2019, NYSAC permitted HBO and ESPN to use Plaintiff Perry's likeness in video footage for which she never gave permission in violation of New York State Civil Rights Law §50 and 51  NYSAC profited from this permission and not only stole Plaintiff Perry's wages as an inspector, NYSAC stole Plaintiff Perry's image and likeness for their financial and/or commercial gain.

71.     Based upon information and belief, NYSAC and individual defendants gave unauthorized permission to Netflix on or about 2019 to use video footage of an interview of Plaintiff Perry for a documentary for their financial and/or commercial gain in violation of New York State Civil Rights Law §50 and 51.  Plaintiff Perry was never consulted on the use of her likeness in these

videos.  Based upon information and belief, NYSAC and individual Defendants stole profits from this unauthorized use of Plaintiff Perry's image and likeness.

72.    Based upon information and belief, throughout Plaintiff's Perry's employment from on or about 2003 through 2018, NYS DOS Affirmative Action Officer failed to ensure a diverse workplace at NYSAC and failed to provide any training on EEO and NYS Human Rights Laws against workplace discrimination, harassment and retaliation.  Throughout 2003 to 2018, there were a total of approximately 40 NYSAC inspectors in the NYC area.  These job opportunities were never publicly posted resulting in a workplace demographic of approximately five (5) black inspectors, one (1) afro-latina for a brief time during on or about 2015 and at all relevant times zero (0) Asian Americans.  The remaining majority were white male and female inspectors who were assigned "main events" or "televised / media broadcast events."   The sport of boxing was at all relevant times dominated by African American or Black American athletes but intentionally and egregiously underrepresented in terms of support staff at NYSAC which was within the control of Giardina and Sumbler.  Previously, executive director David Berlin's mission was to keep Plaintiff Perry out of sight at televised or media broadcast events.  All three executive directors at various times took Plaintiff Perry completely off of or out of assignment rotation to deprive her of any inspector assignments.  Instead, based upon information and belief, executive director David Berlin assigned his friend Sue Etkin, a white female inspector to main events or media broadcast events, who was far less experienced than Plaintiff Perry.  But for Plaintiff Perry's race, she would not have been deprived of inspector assignments for which she was qualified.

73.    Pursuant to FLSA, NYLL and New York State Business Corporation Law §630, Defendants Sumbler and Giardina officers and executives who are individually and personally liable for unpaid minimum wages, spread of hours pay and overtime wages of Plaintiffs Perry and Seme and Collective Plaintiffs.

74.     Defendants Sumbler and Giardina and are personally liable for the unpaid wages and other damages sought herein, pursuant to 29 U.S.C. § 203(d), NYLL § 2, N.Y. Executive Law § 296 (1)(a) and (6), and N.Y. Admin. Code § 8-107 (1) and (7)(v)

75.     At all relevant times throughout Plaintiffs' employment, Individual Defendants Sumbler and Giardina and Defendant NYSAC were joint employers of Plaintiffs, acted in the interest of each other with respect to employees and had common policies and practices as to wages and hours, pursuant to 29 CFR § 791 .2

76.     At all relevant times throughout Plaintiff's' employment, Individual Defendants Sumbler and Giardina had the discretionary power to create and enforce personnel decisions on behalf of Defendant NYSAC, including but not limited to: hiring and terminating at will inspector employees; setting and authorizing issuance of wages: maintaining employee records: setting Plaintiffs' and other employees' schedules; negotiating Plaintiffs' rate of pay; instructing, supervising and training Plaintiffs; and otherwise controlling the terms and conditions of employment for the Plaintiffs.

77.     At all relevant times throughout Plaintiffs' employment, Individual Defendants Sumbler and Giardina were actively involved in the day-to-day operations of Defendant NYSAC by and through their supervisors, commissioners and deputy commissioners.

78.     At all relevant times, Plaintiffs were employed by Defendants within the meaning of FLSA 29 USC §201 et seq.

79.     Plaintiffs  were at all relevant times Inspectors for spectator events hosted by NYSAC. Inspectors' duties were to assist boxers, wrestlers or MMA fighters through the event process to ensure that they are escorted throughout the event, from arrival to the event space, through departure from the event space, and to ensure that these athletes are properly testedand examined by NYSAC medical doctors after each event. The Collective Plaintiffs also included any other at-will,

non-civil service and non-union employees hired by NYSAC to work at these spectator events who were denied minimum wages and any applicable overtime wages.

80.      At all relevant times, Plaintiffs Perry and Seme  worked at least one (1) event per week and regularly worked all work weeks during any given year. One event regularly started at or about 3pm on a given day and ended at or about 1AM to 2:30AM the following day.  None of the Inspector Plaintiffs were given any meal or restroom breaks during their work shifts. Before the start of an event, if NYSAC provided sandwiches to inspectors, inspectors were required to eat outside in the parking lot where truck's ran their engines and gas fumes were overwhelming.  Restroom breaks were given only if the Inspector Plaintiff was able to find a replacement for that short break.

81.      Since on or about January 2015 to date, All Plaintiffs' were continuously paid a flat rate of $100 per event / 8 hour workshift at 12.50 per hour. Plaintiffs regularly worked a shift from at or about 3pm to 1-2am the following morning. Accordingly, Defendants failed to pay Plaintiffs any wages at all for 3 to 4 hours of additional work actually performed by Plaintiffs per shift thereby falling below the prevailing minimum wage rate during any given year.

82.      Defendants also failed to pay spread of hours pay as all Plaintiffs worked more than 10 consecutive hours in a workshift / workday. Defendants failed to pay one hour of additional pay at the minimum wage in addition to their regular wage / minimum wage whichever is higher.

83.      Pursuant to 29 CFR 778.5 and FLSA 29 USC 201 et seq., the higher state minimum wage applies in wage and hour lawsuits. Because Plaintiffs worked within New York City (NYC) at all relevant times, Plaintiffs should have been paid the NYC minimum wage which were by December 31 of each year: 2015 / $10.50 per hour; 2016/ $12.00 ; 2017 / $13.50; 2018 / $15.

84.      Since on or about 2017 to date, Plaintiffs' regular wage rate of $12.50 for an 8 hour workshift, also fell below the prevailing minimum wage rate.

85.      In violation of FLSA and NYLL, Plaintiffs were not properly or timely paid their wages.

Despite submitting their timesheets after each event, Plaintiffs averaged approximately 1-2 monthsbefore they received their paycheck. At all relevant times, there was no regular pay day and Plaintiffs' paystubs did not reflect hours worked.

86.    On or about January 2017, Plaintiff Seme complained to management regarding the long wait times to receive his paycheck. Instead of prompt payment of his paycheck, Plaintiff Seme was terminated on or about March 17, 2017 based on false pretexts contrived by Defendant Giardina and Defendant Sumbler cause NYST Sands threaten use of police force against PlaintiffSeme and his residence.

87.    In violation of NYLL, rules and regulations and NYS Department of Labor Wage Order Plaintiffs Perry and Seme and Collective Plaintiffs who were manual laborers, were not paid on a weekly basis but instead were improperly paid on an arbitrary 1-2 month basis.

88.    Defendants failed to pay Plaintiffs Perry and Seme NYS Labor Law spread of hours pay which is one hour of minimum wage pay for any workday in which an employee works more than 10 consecutive hours.  Plaintiffs regularly worked 11 to 12 hours at any given event.

89.    Defendants failed to timely pay Plaintiffs. Even if Plaintiffs submitted their timesheet at the end of an event, it took approximately 1 to 2 months to receive a paycheck based on that timesheet.  Under the NYS DOL's wage order, manual employees are must be paid on a designated pay day, on a weekly basis.

90.    Defendants willfully misclassified Plaintiffs as employees exempt from the New York State Department of Labor Wage Orders and the New York State Wage Theft Act solely based on NYSAC's status as a government entity.

91.    Based upon information and belief NYSAC, NYS DOS and Gov. Cuomo's office of employee relations were aware, at all relevant times that inspectors were not afforded the benefitsof

the NYS Wage Theft Act §650 et seq., the civil service laws, or union representation and were at-will employees improperly paid less than minimum wages.

92.     Based upon information and belief, NYSAC is a subdivision of New York State Department of State. However, for the purposes of applying the New York State Labor Law ("NYLL) §650 et seq., to this action by Plaintiffs and collective Plaintiffs, NYSAC should not be considered a state office or subdivision. *See, Grace Co. v. Univ. Constr. Fund,* 44 NY2d 84 (NY 1978). NYSAC does not perform an essential function such as provide medical or transportation services ("essential function") to the general public in order to be considered a political subdivision of the state.  See, *Drayton v. Metroplus Health Plan, Inc*. 791 F.Supp.2d 343, 346 - 347 (SDNY, 2011) Plaintiffs were at all relevant times at-will employees hired by NYSAC and were not afforded the benefit of membership in a public or state employee's labor union or civil service employees' laws. NYSAC waived any and all defenses of sovereign immunity when it classified and mistreated Plaintifs as "at will" employees and itself became a private employer subject to NYLL wage theft act §650 et seq.  NYSAC denied Plaintiffs equal protection under the US and NYS constitution and laws by classifying Plaintiffs as "at will" employees and denying them the protectiions of NYS Civil Service Laws and of the New York State Public Employees collective bargaining agreement. Accordingly, NYSAC is not a state office for the purposes of application of the NYLL, as its purpose was commercial in nature. *See, Id*. NYSAC hosts and oversees spectator boxing, wrestling and mixed martial arts (MMA) events and gains substantial tax and fee revenues from these events. These events affect interstate commerce in that these events draw large spectator crowds, vendors, boxing, wrestling, MMA and various other celebrities and various media to the state of New York. These events are also nationally broadcast on internet, cable and social media. Therefore, New York State Labor Law should apply to Plaintiffs .

93.     At all relevant times and throughout the course of Plaintiffs' employment, when they were

required to work 4 events or more during a workweek or more than 40 hours within a workweek, Defendants willfully failed to may overtime wages and spread of hours pay.

94.    As a result of Defendants' actions, of willfully denying overtime wages to their employees and terminating some employees to avoid paying proper regular and overtime wages, Plaintiffs have suffered great hardship and damages as Defendants deprived all Plaintiffs of minimum, spread of hours and overtime wages.  Defendants' actions of not permitting Plaintiffs' break times endangered their health welfare and safety. The oppressive environment imposed upon its employees by Defendants caused them mental anguish, compensatory and punitive damages.

## FIRST CAUSE OF ACTION

**Violation of Fair Labor Standards Act 29 USC §201 et sq. – Unpaid Minimum and Overtime Wages and Retaliation pursuant to 29 USC §215(a)(3)**

95.    Plaintiffs Perry and Seme, , repeat, reallege and incorporate by reference each and every allegation previously set forth as if fully set forth herein.

96.    Defendants throughout most, if not at all relevant times, of all Plaintiffs' employment period, paid all Plaintiffs in amounts below the applicable statutory minimum wage for their hours worked, in violation of the FLSA 29 USC § 206.

97.    Defendants had an unlawful policy and practice of concealing from all Plaintiffs their rights to minimum wages under civil service rules, or by union representation by informing Plaintiffs thatthey are at-will, "state employees." This policy and practice served to deny all Plaintiffs the benefits and protections under the FLSA, NYLL, Civil Service Laws or union collective bargaining agreements.

98.    The overtime wage provisions set forth in FLSA, 29 USC §201 *et seq*. and federal rules and regulations apply to Defendants and protect Plaintiffs .

99.    Whenever Plaintiffs  regularly worked hours in excess of forty (40)hours per work week or

4 or more events within a workweek, Defendants failed to pay the applicable overtime wages at one and one half times the NYC minimum wage rate.

100.     Defendants failed to keep proper and adequate wage notice, time and payroll records of all Plaintiffs in violation of the FLSA and NYLL.

101.     Defendants willfully failed to pay Plaintiffs the appropriate overtime wages for all hours worked in excess of forty (40) hours per workweek, as required by the FLSA, 29 USC §201 *et seq.* and attendant federal rules and regulations.

102.     Pursuant to 29 CFR 778.5 and FLSA 29 USC 201 et seq., the higher state minimum wage applies in FLSA wage and hour lawsuits.  Because Plaintiffs worked within New York City (NYC)at all relevant times, Plaintiffs should have been afforded the benefit of NYC minimum wage which were by December 31 of year:   2015 / $10.50 per hour;  2016/ $12.00 ; 2017 / $13.50; 2018 / $15  Instead, Plaintiffs and Collective Plaintiffs were at all relevant times improperly paid flat $100 per event for an 8 hour work shift.  Accordingly, all Plaintiffs were paid a regular wage of$12.50 per hour based on an 8 hour workshift and Defendants failed to pay for 3-4 hours of wages that were actually worked by Plaintiffs for each work shift.

103.     Defendants' unlawful conduct as described in this Complaint was willful and intentional. Governor Cuomo signed the NYS Wage Theft Act §650 et seq. into law on or about 2012. Governor Cuomo's office of employee relations were aware that or should have been aware that NYSAC inspectors were hired as at will employees without the benefit of civil service laws or union representations and therefore should have been afforded the protections of this Act.

104.     Defendants, a subdivision of New York State Department State, with unlimited resources and regulatory power were aware or should have been aware that their practices were in violationof state and federal minimum and overtime wage laws, rules and regulations as detailed in this Complaint.

105.    Defendants knew or should have known that failing to provide breaks for Plaintiffs endangered their health and welfare. Defendants have refused to reinstate Plaintiffs Perry and Seme and refused to make a good faith effort to comply with the FLSA regarding compensation of minimum wages, spread of hours pay and overtime wages to Plaintiff.

106.    Because of Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to FLSA, 29 U.S.C § 255(a). As a result of Defendants' willful violations of the FLSA, Plaintiffs Perry and Seme and the FLSA Collective Plaintiffs have been deprived of minimum wages, spread of hours pay and overtime compensation in amounts to be determined at the time trial, and are entitled to recovery of such amounts and liquidated damages, pre-judgment interest, attorney's fees, costs and other compensation pursuant to 29 USC 201 et seq.

107.    FLSA 29 USC §215(a)(3) prohibits employers from discharging or discriminating against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this provision.  Defendants discharged Plaintiffs in retaliation for complaining about the 4 to 6 weeks processing time of their paychecks; for complaining about discrimination in obtaining inspector assignments and other terms and conditions of their employment.  Shortly after Plaintiff Seme complained about the 6 week processing period of his paycheck, he was discharged on or about March 17, 2017.  Plaintiff Perry had complained on or about 2018 about her discriminatory denial of her promotion to deputy commissioner.  Instead, Defendants hired Ed Kunkle for an approximately $90,000 salary and travel and hotel expense benefits for him and his family from PA to NY for approximately $1,000 per night.

108.    As a result of the Defendants' violations of the FLSA, Plaintiffs,  have suffered damages by being denied wages at or exceeding the statutory minimum inaccordance with the FLSA in amounts

to be determined at trial and are thus entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to 29 USC § 216 (b)

<u>**SECOND CAUSE OF ACTION**</u>

**Violation of New York Labor Law – Unpaid Minimum Wage, Spread of Hours Pay and Overtime Wage**

109.    Plaintiffs Perry and Seme repeat, reallege and incorporate by reference each and every allegation previously set forth as if fully set forth herein.

110.    As alleged throughout this Second Amended Complaint ("SAC") Defendant NYSAC waived its defense of sovereign immunity when it classified Plaintiffs as "at will" employees and deprived them of protections under the civil service laws and NY public employees collective bargaining agreement with New York State employers.    Individual Defendants waived any sovereign or qualified immunity by exceeding the scope of their respective authority by harassing, discriminating, terminating and retaliating against Plaintiffs based on Defendants' racial animus towards Plaintiffs.

111.    At all times relevant to this action, Plaintiffs Perry and Seme (collectively, "Plaintiffs") were employed by Defendants within the meaning of NYLL §651 et seq and 12 NYCRR§142-2.2 and Part 146-1.2

112.    Defendants' failure to pay Plaintiffs the minimum wage lacked a good faith basis within the meaning of NYLL §663

113.    Pursuant to New York Labor Law Article 19, §663 (3), the statute of limitations of six (6) years further applies to all causes of action beyond the FLSA two (2) or three (3) years statute of limitations period.  29 U.S.C § 255(a)**.**

114.    As alleged throughout this complaint, Plaintiff Seme should be afforded equitable tolling under FLSA for extraordinary circumstances wherein he was intimidated by Defendants to move

out of the state and thereafter in 2020 the notorious and unforeseen once in a lifetime deadly COVID 19 pandemic made finding and consulting with civil attorneys from out of state an undue hardship. Upon consultation with the undersigned attorney on or about March 2021, Plaintiff Seme promptly commenced the instant action

115.    Plaintiff Perry should be afforded equitable tolling under FLSA as the 2020 pandemic caused a hardship in consulting with civil attorneys and the United States Department of Labor assessed her case on or about February 2021 and informed Ms. Perry she also had a private cause of action under FLSA.

116.    Defendants failed to pay Plaintiffs the overtime premium of one and one-half times the regular hourly rate of pay for all of their overtime hours worked, in violation of the NYLL, rules and regulations.

117.    Through their knowing or intentional failure to pay Plaintiffs overtime wages for hours worked in excess of 40 hours per workweek, Defendants have willfully violated the NYLL, Article 19,§§ 650 et seq., and attendant New York State Department of Labor Rules, Regulations and wage orders.

118.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs and pre-judgment and post- judgment interest

### THIRD CAUSE OF ACTION

**New York Labor Law – Failure to Provide Accurate Wage Statements**

119.    Plaintiffs repeat, reallege and incorporate by reference each and every allegation previously set forth as if fully set forth herein.

120.    Defendants have failed to provide Plaintiffs with complete and accurate wage statements throughout their employment listing, inter alia, all regular hours of work, her rate of pay, and the

basis of pay, in violation of NYLL § 195(3).

121.    Defendants failed to reflect any of Plaintiffs' hours worked on their respective wage statements.

122.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants' statutory damages of Two Hundred and Fifty dollars ($250) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000), pursuant to NYLL § 198 (1-d).

## FOURTH CAUSE OF ACTION

**New York Labor Law – Failure to Provide Notice at Time of Hiring AND/OR at the time of each change in wage rate**

123.    Plaintiffs repeat, reallege and incorporate by reference each and every allegation previously set forth as if fully set forth herein.

124.    Defendants failed to provide Plaintiffs at the time of hiring or at any point thereafter, a notice containing the rate of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular pay day designated by the employer; the physical address of the employer's main office or principal place of business; the telephone number of the employer, and anything otherwise required by law, in violation of NYLL § 195(1).

125.    Due to Defendants' violations of the NYLL § 195(1), Plaintiffs and class Plaintiffs are entitled to recover from Defendants statutory damages of Fifty dollars ($50) per workday that the violation occurred, up to a maximum of Five thousand dollars ($5,000) pursuant to NYLL § 198 (1-b).

## FIFTH CAUSE OF ACTION

**Defendants' Deprivation of Plaintiff Perry and Seme's Equal Rights under the Fourteenth Amendment to the US Constitution and laws and to make and enforce contracts pursuant to**

**42 USC §1981 and §1983**

126.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation previously set forth as if fully set forth herein.

127.     The Fourteenth Amendment to the United States Constitution states in relevant part, "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law…nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

128.     The United States Supreme Court has held, the statute of limitations is four (4) years on all actions arising under the "Make and Enforce contracts" provision of 42 USC §1981 *as amend* 1991. *Jones v. R.R. Donnelly Sons Co*., 541 US 369, 382-282 (2004) Plaintiff Seme was terminated on or about March 17, 2017 and timely filed the instant claim on or about March 5, 2021. Plaintiff Perry was terminated on or about April 25, 2018 and timely filed the instant claim on or about March 5, 2021.

129.     Plaintiffs Perry and Seme , bring an action against all named Defendants pursuant to 42 USC § 1981 and 1983. During the relevant time period, since on or about 2017, New York State Governor Andrew Cuomo appointed Kim Sumbler ("Sumbler") as the executive director of NYSAC. And previously, based upon information and belief, Defendant Giardina was appointed as interim executive director of NYSAC.   Defendants Sumbler and Giardina engaged in a series and pattern of racist misconduct, motivated by racial animus toward black women and men and interfered with and created a hostile work environment for Plaintiffs and thereafter terminated Plaintiffs from their employment based on false pretenses. Plaintiff Perry and Seme are both Black Americans.

130.     Even after Plaintiffs Perry and Seme were terminated from their employment on or about

31

April 25, 2018 and on or about March 17, 2017 respectively, Defendant Sumbler, under color of law harassed and intimidated Plaintiffs by causing them to be ejected from places of public accommodation in which Plaintiffs were each lawfully and peacefully present.

131.    As to Plaintiff Seme, Defendant Sumbler under color of law, made false allegations about Plaintiff Seme to New York State Trooper Charles D. Sands ("NYST Sands") who appeared at the home of Plaintiff Seme on or about March 17, 2017 with another unidentified NYST DOE. NYST Sands stated to Plaintiff Seme, "Kim Sumbler said you were going to blow up the building." As a Black American Man, Plaintiff Seme was shocked, intimidated and terrorized at the prospect of palpable police use of excessive force, arrest or criminal charges based on patently false allegations by Kim Sumbler, a white woman. Defendant Sumbler weaponized the police against Plaintiff Seme and was fully aware of the threat of bodily harm or excessive force by police that was likely to befall him. On two more occasions thereafter, during the remainder of 2017, NYST Sands returned to the residence of Plaintiff Seme to intimidate, coerce and harass Plaintiff Seme to falsely implicate him for a "threat" he never made.

132.    As alleged throughout this SAC, NYST Sands returned approximately three (3) additional times to Plaintiff Seme's home and demanded the complaint letter that Plaintiff Seme sent to NYS DOS Affirmative Action Officer Maria Herman on or about March 23, 2017 that complained about NYST Sands unwarranted visits and calls to Plaintiff Seme without probable cause or any justifiable or reasonable cause

133.    Defendant Sumbler arbitrarily and capriciously denied Plaintiff Seme's boxer trainer license renewal application submitted on or about April 2018.

134.    From on or about 2016 through the dates of their termination on or about April 25, 2018 for Plaintiff Perry and on or about March 17, 2017 for Plaintiff Seme, a two (2) year ban on employment with NYSAC for Inspectors to become NYS boxing judges / referees was implemented and applied only on black Inspectors, specifically Plaintiffs Perry and Seme. This ban did not apply to other white inspectors who became or were NYS boxing judges while maintaining

their inspector employee status.

135.    During Plaintiff Perry's fourteen (14) years of employment with NYSAC, there were approximately, less than 5 black inspectors employed by NYSAC at one given time period. However, there were full-time white male inspectors but no full time black inspectors at any time during Plaintiff Perry's 14 years of employment.

136.    Defendant Anthony Giardina who was an interim NYSAC commissioner through on or about March 2017, motivated by racial and gender animus toward Plaintiff Perry interfered with her promotions to Deputy Commissioner and repeatedly demeaned and harassed her by telling Plaintiff Perry to "sit in the back" and "sit in the back out of sight" at boxing events when he knew Plaintiff Perry as an Inspector needed to be ringside. Based upon information and belief Defendant Giardina promoted Frank Vasquez who harassed Plaintiff Perry by yelling at Plaintiff Perry to "shut up" and calling her a "liar" at staff meetings.  Frank Vasquez also stated to Plaintiff Perry that he was employed by the New York State Division of Human Rights in order to deter Plaintiff Perry from filing any discrimination complaints

137.    Based upon information and belief, Defendant Giardina ordered Plaintiff Perry to remain "out of sight" at boxing events that were televised because Plaintiff Perry was a black woman. Most if not all NYSAC employees who sat ringside at boxing events were white men.

138.    As alleged throughout this SAC, On or about March 17, 2017, Defendant Giardina blamed Plaintiff Seme for allowing an unlicensed trainer to appear with a boxer at an event.  However, inspectors were not charged with the duties of checking trainer licensure and did not have the means to check any trainer's licensure at an event.

139.    As alleged throughout this SAC, After Plaintiff Seme's termination from employment, Defendant Sumbler weaponized police to go to Plaintiff Seme's residence on a false report that Plaintiff Seme threatened to blow up a building.  NYSTs repeatedly threatened, intimidated Plaintiff Seme and his mother with police action at the behest of Defendant Sumbler. Defendant Sumbler

further caused Plaintiff Seme to be ejected from places of public accommodations where Plaintiff Seme was lawfully and peacefully present on approximately four occasions.

140.    After Plaintiff Perry was terminated from her employment, at the behest of Defendant Sumbler, Plaintiff Perry was ejected from a place of public accommodations where she was lawfully and peacefully present. Thereafter, Plaintiff Perry was coerced and deterred from attending any public events at public places of accommodation.  Accordingly, Defendant Sumbler retaliated against Plaintiff Perry during and after Plaintiff Perry's termination from employment with NYSAC.

141.    Defendant Sumbler repeatedly, intentionally and maliciously inflicted emotional distress and mental anguish on Plaintiffs, subjected Plaintiffs to involuntary servitude and deprived them of any and all human dignity afforded under the state and US Constitution and laws.

142.    Pursuant to 42 USC §1981 states, "(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) Make and Enforce Contracts… includes the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. (c) Protection Against Impairment The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

143.    "Make and enforce contracts" includes wrongful termination based on false pretext and race based animus; failure to promote; hostile workplace.

144.    42 USC 1983 states in pertinent part,

"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State …subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

### Defendants' Deprivation of Plaintiff Perry's Rights; Wrongful Termination and Hostile Work Environment

145.    On or about 2017 and 2018 Plaintiff Perry was denied a promotion to deputy commissioner. To apply for the promotion, Plaintiff had to request that Commissioner Hoover post the job opening. After applying, with an exemplary performance record and recommendations from superiors, a non-black inspector was given the promotion. This non-black inspector was not required to submit any score card or evaluations as Plaintiff Perry was required to do.

146.    Since on or about 2004 when Plaintiff Perry commenced employment with NYSAC to the date of her termination on or about April 25, 2018, Plaintiff Perry was the only black woman inspector.

147.    Throughout Defendant Giardina's employment as interim Executive Director at NYSAC to on or about March 2017, Defendant ordered Plaintiff Perry to "sit in the back" and "sit in the back out of sight" at boxing events with full awareness that as an inspector, Plaintiff Perry needed to sit ringside.

148.    On or about March 2017, Defendant Giardina requested that Plaintiff Perry give him a "hug" but Plaintiff refused. Defendant Giardina did not request "hugs" from white female employees.

149.    On or about March 2017, Defendant Giardina told Plaintiff Perry at a boxing event that she had not been considered for promotion to deputy commissioner because he questioned Plaintiff

Perry's attentiveness and job performance. Defendant Giardina thereafter told Plaintiff Perry to "sit in the back out of sight." Defendant Giardina ordered Plaintiff Perry out of sight of the camerasas the event was televised because Plaintiff Perry was a black woman.

150.    As alleged throughout this SAC, Defendant Giardina created a racially hostile environment for Plaintiff Perry by criticizing her lack of good judgment when in fact Plaintiff Perry had an exemplary employment file and was recommended for her promotion to deputy commissioner by the commissioner, chairman and previous executive director Eric Bentley and harassed Perry by sending her to the back of the event space so that she would not appear on televised or media broadcast events and asked Plaintiff Perry for a hug.

151.    As alleged throughout this SAC, On or about April 2018, at a boxing event at Barclays Center, Brooklyn NY ("Barclay's event") Defendant Sumbler blamed Plaintiff Perry for not enforcing security measures when Plaintiff Perry was not responsible for security. As Defendant Sumbler stated in her May 2018 memorandum, "immediately prior to" the event, the event security rules were changed in contravention of established policy. There was at least one security officer outside of the boxers' locker rooms. Defendant Sumbler allegedly believed she was in danger when there were "three large men" in a boxer's locker room but never expressed concern for Plaintiff Perry's safety, onlyhers and deputy commissioner Ed Kunkle's safety.  Moreover, Defendant Sumbler was the supervisor in charge of all security for NYSAC employees, not Plaintiff Perry and Barclay's Center security two (2) who were stationed at Gervonta Davis' locker room at the relevant time were the ones who allowed all the individuals inside, not Plaintiff Perry.  Therefore, Defendant Sumbler's assertion that Plaintiff Perry failed to have security (who allowed the individuals inside in the first instance) remove these individuals was nonsensical at best and patently false and absurd.

152.    As alleged throughout this SAC, On or about April 21, 2018 at the Barclay's event, a white male reporter of Swanson media obstructed Plaintiff Perry's path as she escorted a boxer to his locker room to be medically evaluated. When Plaintiff Perry stated that the boxer cannot stop

for an interview and must go directly for an after-fight medical exam, the white male reporter threatened to "kill" Plaintiff Perry. This reporter was instructed by Defendant Sumbler to request that interview with the boxer on his way to his medical exam, in violation of NYSAC medical policy. Additionally, as alleged throughout this SAC Defendant Sumbler failed to ensure there was adequate security measures for the April 21, 2018 event and placed the safety of boxers and a ten (10) year old child in danger. As alleged throughout this SAC, based upon information and belief, Defendant Sumbler assigned an inspector "Luanna" to provide boxing gloves to boxers without any training or knowledge of requisite glove size and weight of individual boxers that endangered the physical safety boxers. Also alleged throughout this SAC Defendant Sumbler allowed Inspector Brett Lipton to walk off the job that cost the his assigned boxer a bout in 2018. Based upon information and belief Sue Etkin was assigned to a female boxer on April 21, 2018 however, Plaintiff Perry was summoned by a deputy commissioner to assist that female boxer. Based upon information and belief Sue Etkin was at the ring at a televised / media broad case event at that time Plaintiff Perry was required to assist that female boxer.

153.    As alleged throughout this Complaint on or about 2017, deputy commissioner Vasquez stated to Plaintiff Perry in front of other staff, that he worked for the NYS Division of Human Rights in order intimidate and discourage Plaintiff Perry from filing discrimination complaints.

154.    On or about April 2018, After Plaintiff Perry complained to the Inspector General's (IG) office, about NYSAC/NYS DOL Affirmative Action office's policy of ignoring and suppressing complaints about the terms and conditions of her employment and harassment by Defendants Giardina and Sumbler, the IG's office further ignored the complaint and thereafter, Plaintiff Perry was fired on or about April 25, 2018 in retaliation for making this complaint about the Affirmative Action Office.

155.    In a letter dated on or about April 6, 2018, the Inspector General's office acknowledged

Plaintiff Perry's complaint about the Affirmative Action office, which was then forwarded to Governor Cuomo's Office of Employee Relations. When Plaintiff Perry followed up with GOER, that office had no record of her complaint. Shortly thereafter, in a letter dated on or about April 25, 2018 NYSAC terminated Plaintiff Perry's employment.

156.    The April 25, 2018 termination letter stated no reason whatsoever for Plaintiff Perry's termination. No complaint to GOER was ever forwarded to investigate Plaintiff Perry's claims of harassment and discrimination in failing to promote her to deputy commissioner and Plaintiff Perry was not afforded due process under the NYS Civil Service Law to dispute or defend against her discharge. Accordingly, Defendants New York State Department of State (NYS DOS) and NYSAC its subdivision waived its defense of sovereign immunity by depriving Plaintiff Perry and Plaintiff Seme of their due process rights under the NYS Civil Service Law. Neither of Plaintiffs every received charges or notices prior to their respective discharge. Instead, NYS DOS and NYSAC unlawfully classified Plaintiffs as "at will" employees which rendered NYS DOS and NYSAC "at will" employers or non-public employers. These Plaintiffs were the only employees that were discriminated against based on their race and misclassified as "at will" employees.

157.    As an inspector and deputy commissioner for 30 continuous years at NYSAC and who was acquainted with most inspectors in NYS, deputy commissioner George Ward stated to Plaintiff Perry, he had never witnessed an inspector terminated for no stated reason the way Plaintiff Perry was terminated.

158.    Neither NYS DOS or its subdivision NYSAC should be permitted by this Court to use their "sovereign" status as a shield and a sword to discriminate against, steal wages from and deprive individual employees of their life and pursuit of happiness. Defendants NYS DOS and its subdivision NYSAC should not be allowed to use statutory or common law exemptions for "state employees" under the New York Labor Law ("NYLL") as the application of those statutory

exemptions would serve to exempt them from liability under the NYLL as well as continue their egregious violations of wage theft and terms and conditions of employment of Plaintiffs with absolute impunity. Application of the "state employee" or "employees of the state" would be unconstitutional as to these Plaintiffs as it would also deprive them of equal protection under the NYS Civil Service Law, New York Labor Law and the thirteenth amendment to the united states constitution prohibiting involuntary servitude.

159.    At the next boxing event, after Plaintiff Perry was terminated on or about April 25, 2018, a former commissioner alerted Defendant Sumbler by email that the event was dangerously understaffed and individuals overcrowded locker room areas. However, Defendant Sumbler expressed no concern regarding the dangerous conditions and did nothing.

160.    Since on or about 2014 through the date of Plaintiff Perry's termination, NYSAC enforced a 2 year ban on employment with NYSAC if an inspector sought to be a NYS licensed boxing judge. If an inspector wanted to be a boxing judge, he/she was required to quit as an inspector for 2 years. However, this 2 year ban was enforced only against black inspectors such as Plaintiffs Perry and Seme to deter them from becoming judges. White male inspectors however, were not subject to this rule and became boxing judges without quitting employment as inspectors.

161.    On or about 2016, when NYSAC under the leadership of Defendant Giardina, discovered Plaintiff Perry was traveling to other states to judge boxing events, the office of general counsel wrote a letter demanding that Plaintiff Perry resign. When Plaintiff Perry replied with evidence that she was not in violation of any law, rules, or regulations and that she was not in conflict of interest, the office of general counsel by letter dated on or about 2016, retreated from their intimidation to coerce Plaintiff Perry to resign and apologized.

162.    After Plaintiff Perry was terminated on or about 2018, Plaintiff Perry was lawfully and peacefully present at a boxing event where Premier Boxing Corporation and Swanson Media in

retaliation for a complaint against its reporter who threatened to kill Ms. Perry and at the behest of Defendant Sumbler maliciously, under color of law caused security to eject Plaintiff Perry from the subject premises

163.    But for Plaintiff Perry's race, Plaintiff Perry would have been licensed as a boxing judge; would have been promoted to deputy commissioner; would not have been terminated; and would not have been unlawfully ejected by Defendant Sumbler or at Sumbler's behest from a place of public accommodations where Plaintiff Perry was lawfully and peacefully present.

**Defendants' Deprivation of Rights and Wrongful Termination of Plaintiff Seme**

164.    Plaintiff Seme was terrorized at his own home on or about March 17, 2017 because Defendant Sumbler, a white woman, weaponized police by making a false criminal allegation and causing NYST Sands and a fellow NYST to question Plaintiff Seme stating, "Kim Sumbler said you threatened to blow up the building."

165.    On or about March 23, 2017, as alleged throughout this SAC, Plaintiff Seme filed a written complaint about NYST Sands unofficially coming to his home to coerce him to confess to the false accusations made by Defendant Sumbler and/or Defendant Giardina that Plaintiff Seme threatened to blow up Madison Square Garden on March 17, 2017.  Shortly after this complaint, NYST Sands visited Plaintiff Seme's home demanding a copy of the complaint letter.  After Plaintiff Seme refused, NYST Sands visited his home approximately two more times and called Plaintiff Seme's mother threatening criminal action against her son.

166.    On or about 2017, Defendant Sumbler filed a harassment claim against a white male Commissioner but did not send NYSTs or police to his home to question him about his alleged harassment of Defendant Sumbler despite believing she was harassed and threatened.

167.    On approximately three more occasions when Plaintiff Seme attended public events that were also attended by Defendant Sumbler, Defendant Sumbler unlawfully but under color of law

ejected Plaintiff Seme from event spaces or public places of accommodation where he was peacefully and lawfully present with friends and threatened to call the police on Plaintiff Seme. Each time, Defendant Sumbler exceeded her authority as executive director and unlawfully obstructed Plaintiff Seme's constitutional rights to lawfully and peacefully exist in public spaces without the threat of police action against him

168.    Plaintiff Seme was also deterred from becoming a NYS boxing judge as a result of the 2 year ban even though his white counter parts were not subjected to such ban.

169.    Plaintiff Seme paid for a renewal application of his trainer license on or about April 2018 and to date, was arbitrarily denied a renewal of his trainer "seconds" license by Defendants.

170.    On or about March 17, 2017, at a boxing event, Defendant Giardina accused Plaintiff Seme for the presence of an unlicensed trainer in a boxer's locker room. Inspectors were not charged with the duty of checking trainer's for their license and Plaintiff Seme had no means or access to check on the trainer's license status at an event

171.    . Both Plaintiff Seme and Plaintiff Perry were deprived of their fourteenth amendment right to equal protection under New York State Law to become boxing Judges in New York State without having to forego their positions as Inspectors.  White inspectors were freely allowed to be boxing judges without quitting their inspector positions for two years, such as Eric Bentley prior to his appointment as executive director on or about 2016.

172.    Both Plaintiffs were denied their fourteenth amendment rights to equal protection under the New York State Civil Service laws concerning their due process rights relating to their respective terminations from employment and the terms and conditions of their employment including but not limited to wages.  Plaintiff Perry had complained to Defendant Giardina about inspectors being blamed for unfulfilled tasks that were not the duties of the inspectors but rather the duties of the deputy commissioners and commissioners. Defendant Giardina thereafter, at various

times during March 17, 2017 retaliated against Plaintiff Perry by denying her promotion to deputy commissioner. But for Plaintiff Perry's race, she would have been promoted to deputy commissioner on or about 2016 or 2017.

173.    But for Plaintiff Seme's race, he would not have been harassed, intimidated and terrorized by NYS police at his residence at a behest of Defendant Sumbler who made a false allegation of criminal conduct;

174.    But for Plaintiff Seme's race, he would have become a boxing judge; and /or he would have been granted a "seconds" license; and would not have been terminated; he would not have been further ejected by Defendant Sumbler or at Sumbler's behest who caused security to eject Plaintiff Seme from places of public accommodation where he was lawfully and peacefully present.

175.    As alleged throughout this SAC, white inspectors walked off the job; walked away from their assigned boxer after they gave their urinalysis and gloved; harassed Plaintiff Perry and none of them suffered any adverse employment action whatsoever. Instead, Defendants fabricated lies about Plaintiffs and terminated them from employment denying them due process under the civil service laws by classifying them as "at will" employees. And further subjected Plaintiffs to involuntary servitude by failing to pay them wages for all hours worked during their employment.

176.    During Plaintiff Perry's fourteen years as an inspector, there were less than five black inspectors at any given time period. Plaintiff Perry was the only black female inspector. Defendants systematically contrived false pretenses under which they terminated black inspectors, and failed to give them full time status or benefits. Defendants systematically deterred or prevented black individuals from being hired as an inspector by paying less than minimum wage, providing substandard work conditions and denying black inspectors full time status.

177.    Inspectors generally have a passion for the professional sport of boxing. Plaintiffs Perry and Seme suffered tremendous mental anguish and emotional distress when they were maliciously

and fraudulently deprived of their rights to participate in the sport they were passionate about and dedicated their time and lives to and were even deprived of their rights to lawfully and peacefully attend boxing events at places of public accommodations as spectators

178.    Plaintiff Perry was featured in a 60 minutes interview on or about 2017 because she provided moral support and guidance to a boxer named Danny Jacobs. Mr. Jacobs was stricken with cancer but recovered and successfully returned to the sport.  Based on their racial animus towards Plaintiff Perry the legal department and Defendant Giardina harassed her to obstruct her personal appearance on 60 minutes.  NYSAC / NYSDOS legal department relented on condition that an attorney for NYSAC also be present for the 60 minutes interview.

179.    Defendant Sumbler made life insufferable for, and threatened to take Plaintiff Seme's liberty and deprived his pursuit of happiness that Plaintiff Seme, a Black American was forced to move out of the state.

180.    Defendant Sumbler made life insufferable and the pursuit of happiness impossible for Plaintiff Perry that she suffered mental anguish, emotional harm, heart problems and depression. Plaintiff Perry to date, under standing threat by Defendant Sumbler of being removed from the event premises, cannot attend boxing events that she has a legal right to do as a Black American.

181.    As alleged throughout this SAC, Defendant NYSAC's workplace was hostile toward Plaintiffs, Defendants Sumbler repeatedly made false allegations against Plaintiffs to terminate them from their employment and then repeatedly retaliated against Plaintiffs during and after their respective terminations from employment by use or threat of use of police forces against them based on their racial animus towards Plaintiffs.  But for Plaintiffs' race, the threat of and/or use of police force would not have been used against them.   But for Plaintiffs' race, neither would have been terminated from their employment.

182.    Defendant Sumbler to date has failed to pay compensation to Plaintiffs for all hours

worked by them; interfered with their right pursue employment in the industry; interfered with and obstructed the Plaintiffs' rights to attainment of their boxing judge's license and Plaintiff Seme's Seconds License.

183.     Accordingly, Defendants NYSAC, Sumbler and Giardina are liable to Plaintiffs pursuant to 42 USC 1981 and 1983 for compensatory and punitive damages and Plaintiffs pray that the Court enjoin from their race based misconduct that terminated them and deprived them form enjoyment of public events as they ejected Plaintiffs from public places of accommodations that deprived and continue to deprive Plaintiffs of their rights, privileges, or immunities secured by the Constitution and laws.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs Perry and Seme, , pray for the the following relief:

A.     An order declaring New York State Athletic Commission is not a subdivision of the State for purposes of employer liability under FLSA, NYLL, 42 USC §1981 and §1983;

B.     An order tolling the statute of limitations period for either or both Plaintiffs due to the extraordinary circumstances of COVID 19 pandemic throughout most of 2020; and

C.     Issuance of an  order enjoining Defendants from   the practices complained of in thisComplaint that are unlawful pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., New York Labor Law, Article 19, §§ 650 et seq., and attendant New York State Department of Labor Rules and Regulations, Wage Orders

D.     Damages for unpaid minimum or regular and overtime wages pay under the FLSA, 29 USC §201 et seq. and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) and the supporting United States Department of Labor Regulations in amounts to be determined at the time of trial;

E.     Damages for unpaid minimum wage, spread of hours pay and overtime wages under NYLL,

NYS DOL Rules, Regulations and Wage Orders, and an additional and equal amount as liquidated damages pursuant to NYLL §198(1-a) and § 663(1) in amounts to be determined at the time of trial;

F.    Civil penalties of Ten Thousand Dollars ($10,000) for each of Defendants' willful and repeated violations of the FLSA 29 USC §207, 215(a)(2) pursuant to 29 U.S.C. § 216(a);

G.    An award of statutory penalties of fifty dollars ($50) per work day up to five thousand dollars ($5,000) for Defendants' failure to provide Plaintiffs with wage notices at the time of hiring, or at any point thereafter, pursuant to NYLL § 198 (1-b);

H.    An award of statutory penalties of two hundred fifty dollars ($250) per workday up to five thousand dollars ($5,000) for Defendants' failure to provide Plaintiffs with accurate wage statements, pursuant to NYLL § 198 (1-d);

I.    An award of statutory damages for Defendants' failure to prove Plaintiffs with wage statements pursuant to NYLL §198

J.    An award of back wages, front wages, liquidated damages, emotional distress, mental anguish, and punitive damages for the Defendants' prohibited retaliation against Plaintiff Perry and Seme pursuant to 29 U.S.C. § 215(3);

K.    An award of front pay, lost compensation, emotional distress, punitive damages and liquidated damages up to a maximum of Twenty Thousand Dollars ($20,000.00), for Defendants' prohibited retaliation against Plaintiff pursuant to NYLL § 215(a)(2);

L.    Permanently enjoin Defendants from willfully failing to apply prevailing NYS / NYC minimum wages, spread of hours pay and overtime wages pursuant to FLSA and NYLL.

M.    An award of prejudgment interest pursuant to 28. U.S.C § 1961;

N.    An award of pre-judgement interest of nine per cent per annum (9%) pursuant to the New York Civil Practice Law and Rules §§ 5001- 5004

O.    An award of post-judgment interest pursuant to 28 U.S.C. § 1961 and/or the New York

Civil Practice Law and Rules § 5003;

P.      An award of attorney's fees and costs pursuant to 29 U.S.C § 216(b), NYLL §§ 198 and 663(1); and

Q.      Declare that Defendants deprived Plaintiffs of their rights under the Fourteenth Amendment to the US Constitution to equal protection under the Constution and laws of the US and New York State.

R.      Order Defendants to reinstate Plaintiff Seme as an Inspector or in the alternative, grant Plaintiff Seme's Seconds License;

S.      Order Defendants to reinstate Plaintiff Perry to her deputy commissioner position or in the alternative, grant Plaintiff Perry's Boxing Judge License;

T.      Enjoin Defendants' racially discriminatory misconduct, practices and policies and afford Plaintiffs equal rights under the law to make and enforce contracts pursuant to 42 USC §1981;

U.      Declare Defendants violated 42 USC 1983 depriving Plaintiffs of their rights, privileges and immunities individually and under color of state law;

V.      Order Defendants to pay Plaintiffs pursuant to 42 USC §1981 and 1983 compensatory and punitive damages; and

W.      Such other and further relief as this Court shall deem just and proper.


Dated: New York, NY
        September 3, 2021

                                        **LAW OFFICE OF SUSAM GHIM**

                                By:     /s/ Susan Ghim
                                        _____
                                        Susan Ghim, Attorney for Plaintiffs
                                        244 Fifth Avenue, Suite 1434
                                        New York, New York 10001
                                        (917) 549-4708
                                        GHIMLAW@GMAIL,COM