Susan Ghim
Law Office of Susan Ghim
244 Fifth Avenue, Suite 1434
New York, NY 10001
Email: ghimlaw@gmail.com / Phone: (917) 549-4708

March 18, 2022

Via ECF
Hon. Stewart D. Aaron
United States District Court
Southern District of New York
500 Pearl Street Room 1970
New York, NY 10007

    Re: *Perry et al., v. New York State Athletic Commission et al.,* Index No. 21cv1967 (SDA)
        Joint Settlement Letter for *Cheeks* Review per Magistrate Judge Aaron Order [doc. 58]

Dear Judge Aaron:

    As your Honor is aware, the undersigned counsel represents Plaintiff Jean Seme in the above entitled action. The parties are pleased to inform the Court that these parties have amicably resolved their disputes and executed a Settlement Agreement. Pursuant to your Honor's Order dated on or about February 25, 2022 [ECF doc. no. 58], I submit this joint letter, with the attached Settlement Agreement for your approval. This joint letter was due on March 11, 2022 and was extended to March 18, 2022 by Defendants to accommodate the Office of the Attorney General's (OAG) review of the Settlement Agreement. [ECF doc. 60]. Plaintiff Seme has complied with all further requests by the OAG for a Medicare Affidavit and Settlement Payment Voucher. Defendants' counsel acknowledged receipt of these documents and represented that they would forward to the appropriate agency office for processing and contact Plaintiff's counsel if any additional information is required.

    On or about February 16, 2022, the parties participated in a settlement conference before your Honor [ECF doc. 52]. As your Honor is aware, Plaintiff Dorothea Perry voluntarily dismissed her claims, without prejudice that was so ordered, on or about February 25, 2022 [ECF doc.56]. On or about February 25, 2022, Plaintiff Seme and the Defendants mutually agreed to settle this action in principle [ECF doc. no. 58]. The parties consented to your Honor proceeding with the remainder of this action and enforcement jurisdiction. [ECF doc. no. 57]

    Pursuant to your Honor's Order dated on or about February 25, 2022, we are providing the following information to support that the settlement of Plaintiff Seme's wage and hour claims is fair and reasonable pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

**I.    Plaintiff Seme's Claims:**

(a)    <u>FLSA and NYLL claims</u>: *Cheeks* is inapplicable to this settlement as the FLSA claims are

likely to be dismissed based on the statute of limitations. As alleged in the Second Amended Complaint ("SAC"), Plaintiff Seme was paid a daily rate of $52 for 12-hour work shifts at events regulated by NYSAC. Based on an 8-hour work day, the daily rate would have yielded an hourly rate of $6.50. The federal minimum wage since on or about 2009 to date has been $7.25. The statute of limitations is 2 years from the date of employment pursuant to FLSA and 3 years if the FLSA violation was willful. *See* 29 USC §201 et seq. NYLL has statute of limitations of 6 years. *See* NYLL §650 et seq. However, Defendants asserted that the applicable sections of the NYLL only apply to private employers and, therefore, the NYS minimum wage was inapplicable to Plaintiff Seme's employment. Defendants further claimed that Plaintiff Seme was paid more than the minimum wage and disputed his actual hours worked. The NYS minimum wage in effect during Plaintiff Seme's employment with NYSAC was $11.00 per hour until December 31, 2017; $9.00 per hour until December 31, 2016; and $8.75 until December 31, 2015. Based on the NYS minimum wage during the relevant time period of Plaintiff's employment, on or about January 2015 through March 2017, the alleged wage underpayments were estimated by Plaintiff Seme to be approximately $5,988 at one 12-hour event/work shift per week. Notwithstanding, Plaintiff Seme's termination date from employment with NYSAC was March 17, 2017 and therefore, without the application of a tolling provision, the court is likely to dismiss any FLSA claims by Plaintiff Seme. It is Plaintiff Seme's contention that based on sovereign immunity the court may further dismiss Plaintiff Seme's NYLL claims.

Plaintiff Seme pled SAC that a tolling provision should apply because he was forced to move out of state and was unable to consult with and hire an attorney admitted in New York State. However, this court is not likely to apply a tolling of the statute of limitations under these facts. Accordingly, the *Cheeks* standard should not apply to the settlement amount and general release and instead, the fairness and reasonable standard should be construed on the §1983 claims.

(b)   Plaintiff Seme's §1983 claim: Plaintiff Seme pled in the SAC, that New York State Athletic Commission ("NYSAC"), by and through individual Defendants Kim Sumbler and Anthony Giardina, violated his 14th Amend. rights to equal protection and due process under federal and state laws. Plaintiff Seme alleged that he was a civil service employee who was protected under Civil Service Law §75 (CSL). Plaintiff Seme alleged that in violation of CSL §75, Defendants discharged Plaintiff Seme on or about March 17, 2017 without notice and a hearing. This was the same evening that Plaintiff Seme allegedly witnessed the alleged sexual harassment of former co-Plaintiff Perry. Plaintiff Seme further alleged that in retaliation for requesting a hearing on his discharge, Defendants Sumbler and Giardina unlawfully sent NYS Police to resolve this employment dispute under the pretext that Defendant Sumbler thought she heard a threat made by Seme, but not against her. [ECF doc. 41-3]

On or about April 2018 Plaintiff Seme applied for a seconds license so that he could train boxers for a professional fee. Plaintiff Seme alleged that Defendant Sumbler had complete control of the licensing process and approved all licenses, yet failed to respond to Plaintiff Seme's application at all. Plaintiff Seme further alleged that on or about June 2018, Defendant Sumbler sent NYS Police after Plaintiff Seme because he was lawfully and peacefully present at a public event. NYS Trooper Sands noted in his police report that Plaintiff Seme had no criminal record and that there were no threats made by Plaintiff Seme at any time and there would be no criminal charges made against him [ECF doc. 41-3].

2

Plaintiff Seme claimed that the alleged acts of retaliation in April and June 2018 were not time barred as the instant action was commenced on or about March 5, 2021. Plaintiff alleged a continuing pattern of harassment against him ever since he witnessed the alleged sexual harassment of former co-plaintiff Perry and since 2016 about NYSAC's discriminatory process of assigning most work to non-black inspectors. Hostile work environment claims may cover conduct that occur before the statutory time period as long as an act contributing to the hostile work environment occurs within the limitations period. *See, Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011); *accord Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, (2002)  The alleged April and June 2018 acts of retaliation were post-employment conduct. However, the Supreme Court has held that protections against retaliation extend "beyond workplace-related or employment related retaliatory acts and harms. *See, Burlington N. & Santa Fe Ry. Co. v. White*, 548 US 53, 67 (2006)  An adverse employment action in the context of a retaliation claim is any action that is "harmful to the point that [the action] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*. In the case at bar, Plaintiff Seme alleged that sending NYS Police to Plaintiff Seme's home to resolve an employment dispute deterred him from pursuing his charge of discrimination and forced him to move out of New York state.

(c)     NYS Notice of Claim:  In his Notice of Intention to File a Claim ("Notice of Claim"), Plaintiff Seme alleged that Maria Herman was the sole affirmative action officer for NYSAC during the relevant time period, and that she concealed Plaintiff Seme's claims under Title VII and the NYS Human Rights Law. During discovery, the Defendants produced an internal complaint dated on or about March 2017 that purportedly commenced an investigation as to Plaintiff Seme's discharge on or about March 17, 2017. Plaintiff Seme alleged that Maria Herman signed this complaint on behalf of Plaintiff Seme without authorization and never provided Plaintiff Seme with notice of or a copy of the complaint. [ECF doc. no. 41-6]. Plaintiff Seme further alleged that had he been provided with a copy of this internal complaint, he would have received notice that he was permitted to file a complaint with the Equal Employment Opportunity Commission ("EEOC") and/or the New York State Division of Human Rights ("NYS DHR") without waiting for the internal investigation to be completed. [ECF doc. no. 41-6] Plaintiff Seme alleged he would have had further notice that the internal complaint allegedly tolled his time to file a complaint with the EEOC and/or NYSDHR to one year and 90 days [Id.].

During discovery in this action, Plaintiff Seme alleged that for the first time, he discovered that non-party James Leary participated in communicating by email with non-party James Post to send NYS Police Officers / Troopers to Plaintiff Seme's home to inquire about Plaintiff Seme's discharge on or about March 17, 2017 [ECF doc. no. 41-4]. Based on claims for fraudulent concealment of claims by Maria Herman, Plaintiff Seme's §1983, NYS HRL and abuse of process claims in state court would not be time barred and be extended to 6 years from the date of the fraud or two years from the date of discovery pursuant to CPLR 203. *See*, *Simcuski v. Saeli*, 44 NY2d 442, 452 (NY Ct. App., 1978) (The Court held that "nondisclosure or concealment may affect the damages recoverable, …provides a foundation for seeking to invoke the doctrine of equitable estoppel") (*Id*.). Moreover, as detailed above, Plaintiff Seme claimed that the denial of his seconds license and harassment / retaliation by and through the NYS Police on or about June 2018 were

3

never time barred. Plaintiff Seme would have made out prima facie claims against these defendants in a state court action.

## II. Defendants' Defenses and Potential Monetary Exposure:

As provided in their Motion to Dismiss, Defendants believe that all of Plaintiff Seme's claims are barred by sovereign immunity because the NYSDOS is a state agency, NYSAC is a division of the NYSDOS, and all of the claims against the individual defendants occurred when they were completing their official job duties in the scope of their employment with the State of New York.

With respect to Plaintiff Seme's claims under the FLSA, as acknowledged herein, such claims are time barred. Even if such claims were not time barred, Defendants did not violate the FLSA as Plaintiff Seme earned more than the federal minimum wage. Defendants further assert that Plaintiff Seme's claims under the NYLL are also inapplicable as the statutes cited to in his Complaint are inapplicable to the State of New York and the individual defendants. Defendants further believe that Plaintiff Seme's claims under 42 USC §1983 are time barred.

Accordingly, Defendants are confident that their Motion to Dismiss would have been granted in its entirety and Plaintiff Seme would not be entitled to any money damages. However, Defendants recognize that there could be continuing defense costs pursuant to the Notice of Claim.

III. Fairness and Reasonableness of the Settlement Amount:  Without admitting any liability whatsoever, defendants agreed to pay a settlement amount of Seven Thousand Five Hundred Dollars ($7,500.00) to Plaintiff Seme in full settlement of all of his claims without further litigation and in exchange for a general release.

(a) Plaintiff Seme's Calculations:
Plaintiff Seme pled damages of lost wages for his §1983 cause of action. Plaintiff Seme was paid approximately $2,017 for the full year in 2016 based upon NYSAC's W-2 Statement issued to Plaintiff Seme and publicly available salary information for all public officials Over the course of five (5) years, from the time of discharge to date, his compensation would have been approximately $8,068 based upon the 2016 annual wage amount paid by NYSAC to Plaintiff Seme Also, if the relevant NYS minimum wage applied during the time of his employment, Plaintiff Seme would have received approximately $5,988 in wage underpayments during his employment from on or about January 2015 to March 2017. This was calculated based on the assumption that Plaintiff worked one 12 hour event per week during his employment term. Plaintiff worked 1-2 events per week but not every single week in a given year. Therefore, the assumption of 1 event every week was a fair estimate of Plaintiff Seme's actual days worked. See e.g., *Solano v. Andiamo Café Corp*. 19 cv 03264 (SN) at 8 (SDNY, November 17, 2020) (This court explained, "employees may rely solely on their own recollections if documentation by the employer is inadequate, inaccurate, or absent altogether.") NYSAC was unable to produce any documents with a computation of Plaintiff Seme's yearly total actual hours worked. Therefore, it was presumed based upon Plaintiff Seme's recollection that each event was approximately 12 hours. Accordingly, if Plaintiff went to trial, it is not likely that he would have received more than this amount in lost wage damages. For instance, the $8,068 may have been reduced by the reduction

4

of the number of events in 2020 due to COVID. Despite COVID restrictions, NYSAC held fight events during 2020 and 2021. The $7,500 settlement amount also covers costs. Plaintiff Seme has approximately $1,826 pending in deposition transcript costs that would be covered by the $7,500. This cost is in addition to approximately $1,500 that Plaintiff Seme already paid in deposition costs for other witnesses, witness fees and court index fee.

(b)     Plaintiff Seme's Equitable Relief in the Settlement Agreement:

The first equitable relief in the Settlement Agreement states in relevant part, *"Plaintiff Seme shall have the opportunity to apply to NYSAC for a Seconds (a/k/a Corner) license."* Moreover, the "adequate time" to process Plaintiff Seme's Seconds license is two (2) weeks according to Defendant NYSAC's current written process that is attached to the settlement agreement as Exhibit C. Furthermore, the Settlement Agreement includes that "NYSAC shall follow in good faith its ordinary process for review of such an application." Since this court retains enforcement jurisdiction of this Settlement Agreement, Plaintiff Seme would not obtain more equitable relief from state court proceedings. Accordingly, Plaintiff Seme agreed it was fair to provide a general release outside of the *Cheeks* standard for all named fefendants and potential defendants: Maria Herman, James Leary, Linda Baldwin and James Post named in the Notice of Claim served on the attorney general on or about November 10, 2021. [*See* Settlement Agreement, Exhibit B].

As to the second equitable relief in the Settlement Agreement, Defendants understand and agree that "Plaintiff Seme may attend public events in public areas, provided, however, that if and when Plaintiff Seme obtains a Seconds license, Plaintiff Seme's access will be consistent with his licensure and promotor's and/or boxer's permission." This portion of the equitable relief remedies Plaintiff Seme's allegations that Defendants harassed and retaliated against Plaintiff Seme with NYS Police Action when Plaintiff peacefully and lawfully attended public events with promotors' and boxers' permissions in 2018. Plaintiff Seme claimed that this threat continued to the date of the Settlement Agreement. Plaintiff Seme would not have obtained more equitable relief had he proceeded with these claims in state court. Similar to the above, Plaintiff Seme agreed it is fair and reasonable to provide a general release to all of the named defendants and non-party potential defendants.

(c) Plaintiff Seme's Attorneys Fees:

Plaintiff Seme's undersigned attorney has agreed to waive all attorneys' fees arising from the prosecution of this Action as to Plaintiff Seme only. Accordingly, a fairness review of attorneys' fees is inapplicable as to Plaintiff Seme.

Based on the foregoing, even in light of *Cheeks*, Plaintiff Seme would not likely have obtained more wage damages and/or equitable relief had he proceeded to trial on his claims. Accordingly, Plaintiff Seme respectfully requests that your Honor 1) so order the parties' Settlement Agreement; and 2) discontinue the action for 30 days to re-file to allow the parties to consummate the terms of the Settlement Agreement; and 3) retain enforcement jurisdiction over the Settlement Agreement; and 4) once the Stipulation of Dismissal with prejudice by Plaintiff Seme only is filed, so order the stipulation as to Plaintiff Seme only; and 5) order any and other further relief that your Honor deems just and proper.

Respectfully submitted,

/s/ Susan Ghim

Susan Ghim